

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————————

No. 02-21-00371-CV

———————————————————

IN THE INTEREST OF S.G., JR., A CHILD

---

On Appeal from the 442nd District Court
Denton County, Texas
Trial Court No. 20-9433-442

---

Before Kerr, Womack, and Wallach, JJ.
Memorandum Opinion by Justice Kerr

## MEMORANDUM OPINION

Father appeals a final judgment terminating the parent–child relationship with his son Ryan.[1] Because Father challenges evidentiary sufficiency of only one of the two conduct grounds supporting the termination and because the evidence supports the trial court's finding that terminating the relationship was in Ryan's best interest—under the applicable legal and factual sufficiency standards—we affirm.

### Brief background

The Department sought to remove Ryan from his mother's care eight months after Father went to prison for multiple felonies. Mother had taken Ryan to the hospital with arm pain; 10-month-old Ryan had an acute arm fracture, healing wrist and arm fractures, two well-healed arm fractures, and a well-healed leg fracture. The doctor believed that Ryan had experienced "multiple episodes of violence and trauma."

Before trial, Mother and the Department settled, with Mother agreeing to voluntarily relinquish her parental rights in exchange for the Department's keeping Ryan in his placement and both the Department's and the placement's allowing Mother visitation. The parties waived a jury, and the trial court determined that Mother's and Father's parent–child relationship should be terminated.

In doing so, the trial court expressly found that Father had

---

[1]We use an alias to refer to the child. *See* Tex. Fam. Code Ann. § 109.002(d); Tex. R. App. P. 9.8(b)(2).

- knowing Mother was pregnant, voluntarily abandoned her "beginning at a time during her pregnancy . . . and continuing through [Ryan's] birth"; failed to adequately support Mother or provide her medical care "during the period of abandonment before the birth of the child"; and remained apart from Ryan or failed to support him since birth; and

- knowingly engaged in criminal acts that led to his conviction, imprisonment, and inability to care for Ryan for at least two years after the removal petition's filing date.

Tex. Fam. Code Ann. § 161.001(b)(1)(H), (Q). The trial court relied on Father's own testimony that he began four concurrent four-year sentences before Ryan's birth and that his maximum expected release date was October 23, 2023, "more than 2 years following the date" of the removal petition's filing.

## Conduct-ground challenge overruled

For a trial court to terminate a parent–child relationship, the Department must prove two elements by clear and convincing evidence: (1) that the parent's actions satisfy one ground listed in Family Code Section 161.001(b)(1); and (2) that termination is in the child's best interest. *Id.* § 161.001(b); *In re E.N.C.*, 384 S.W.3d 796, 803 (Tex. 2012). A finding of only one conduct ground alleged under Section 161.001(b)(1) is sufficient to support termination. *In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003).

Father challenges only the abandonment finding. Because he does not challenge the criminal-conduct (Q) finding, he has effectively conceded it. *In re C.W.*, No. 02-21-00252-CV, 2022 WL 123221, at *3 (Tex. App.—Fort Worth Jan. 13, 2022,

no pet.) (mem. op.). Thus, we need not address his first and second issues other than to overrule them. *See id.*

**Termination in Ryan's best interest**

Father argues in his third and fourth issues that the best-interest evidence is legally and factually insufficient.

## A. Best-interest factors

Although we generally presume that keeping a child with a parent is in the child's best interest, *In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006), the best-interest analysis is child-centered, focusing on the child's well-being, safety, and development, *In re A.C.*, 560 S.W.3d 624, 631 (Tex. 2018). And evidence probative of a Subsection (b)(1) ground may also be probative of best interest. *In re E.C.R.*, 402 S.W.3d 239, 250 (Tex. 2013). In reviewing best-interest evidence, we consider nonexclusive factors that the factfinder may apply:

- the child's desires;

- the child's current and future emotional and physical needs;

- the current and future emotional and physical danger to the child;

- the parenting abilities of those seeking custody and programs available to assist them;

- the parties' plans for the child, including the stability of the proposed home or placement;

- the parent's acts or omissions suggesting that the existing parent–child relationship is inappropriate; and

• any excuse for the parent's acts or omissions.

*Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976).

## B. Applicable sufficiency standards

To determine whether the evidence supporting termination of the parent–child relationship is legally sufficient, we look at all the evidence in the light most favorable to the challenged finding to determine whether a reasonable factfinder could form a firm belief or conviction that the finding is true. *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005). We assume that the factfinder settled any evidentiary conflicts in favor of its finding if a reasonable factfinder could have done so. *Id.* We disregard all evidence that a reasonable factfinder could have disbelieved, and we consider undisputed evidence even if it is contrary to the finding. *Id.* That is, we consider evidence favorable to the finding if a reasonable factfinder could, and we disregard contrary evidence unless a reasonable factfinder could not. *See id.*

In determining the factual sufficiency of the evidence supporting the termination of a parent–child relationship, we must perform "an exacting review of the entire record," *In re A.B.*, 437 S.W.3d 498, 500 (Tex. 2014), to decide whether a factfinder could reasonably form a firm conviction or belief that the Department proved the applicable conduct grounds and that terminating the parent–child relationship would be in the child's best interest, Tex. Fam. Code Ann. § 161.001(b); *In re C.H.*, 89 S.W.3d 17, 28 (Tex. 2002). If the factfinder reasonably could form such

a firm conviction or belief, then the evidence is factually sufficient. *C.H.*, 89 S.W.3d at 18–19.

For both types of review, we must remember that the factfinder is the sole judge of the witnesses' credibility and demeanor. *In re J.O.A.*, 283 S.W.3d 336, 346 (Tex. 2009).

## C. Applicable evidence

The best-interest evidence focused on Father's ability to care for Ryan and Ryan's trial circumstances:

- In his service-plan paperwork, Father admitted he began using illegal drugs at eight years old.

- Father had committed four felonies within a year.

- Father acknowledged that for a year before trial, Ryan had lived with an unrelated family, who provided for Ryan well and took care of his emotional and physical needs. The foster family was loving and bonded with Ryan. The placement was the only permanency Ryan had experienced in his short life.

- Father knew he could not provide for Ryan, but he thought it would be better for Ryan to live with family.[2]

- None of Father's family had sought to visit Ryan or provided gifts or support for him.

- Father anticipated being released on parole in June 2022, but he had not found out yet whether that would happen. He had been denied parole once before. Father planned to live with his sister when released and had a job waiting for him.

---

[2]Father claimed that before Ryan's removal his family had provided housing, food, and transportation to Mother and that they "basically took care of" Ryan. Ryan and Mother had stayed with Father's sister for a time.

- Father had been in CPS care as a child and aged out without having been adopted.

- Father took multiple classes while incarcerated: parenting, drug intervention, and business management. He also attended AA, NA, and religious services and was working on his GED. In prison, he had requested to be in 24-hour lockdown "[t]o separate [him]self from negativity." Nevertheless, the CPS conservatorship specialist testified that because of Father's incarceration, he could not provide Ryan permanency and stability.

Though Father wanted Ryan to live with family, the evidence showed that CPS had not found a suitable family placement. None of Father's family members had attended any hearings or asked for Ryan to be placed with them.

CPS primarily considered one of Father's sisters[3] but denied placement with her after a home study. The Department's evidence showed that

- CPS had investigated the sister multiple times for her admitted and continued drug use, at times in her children's presence. Although CPS had ruled out at least two of its investigations, Father's sister had tested positive for marijuana use during one of them.

- The sister risked having her own children removed.

- The CPS conservatorship specialist hadn't heard from the sister since around the time the Department denied her as a possible placement, several months before trial.

- The Department did not know the sister was married and, thus, had not included her husband in its home study.

Father's sister disputed the Department's evidence:

- She claimed to have quit using marijuana a month before trial. And she provided a printout of a clean urine analysis.

---

[3]Father had another sister who was unsuitable because of her criminal history.

- She claimed that CPS had not done a home study on her for Ryan's case but rather when she was trying "to get her" sister's children.[4]

- Although she had never reached out to the Department in Ryan's case, she claimed she did not know how to do so. But Father's sister also said that CPS had refused to give her information the one time she attempted to find out about Ryan.

- Before the removal, she had taken Ryan and Mother in. She and her husband "supported his milk, his diapers, his toys, his bottles." They also gave him attention and love. Her son was particularly attached to Ryan and grieved when Mother and Ryan moved to Denton.

- She was prepared to care for Ryan until he turned 18.

CASA[5] thought terminating the parent–child relationship and keeping Ryan in his then-current placement would establish permanency and stability for him. CASA also believed that facilitating post-termination visitation with Mother was in Ryan's best interest. Long-term, CASA recommended adoption, by either a family member or nonfamily member, as Ryan's post-termination plan.

## D. Analysis

Father's best-interest argument focuses on the fact that Mother's acts or omissions were the catalyst for Ryan's removal. He also argues that the evidence shows that he did "everything he could to improve himself while incarcerated" and that the Department's and CASA's failure to adequately support him impeded his and his family's ability to care for Ryan.

---

[4]She claimed to have been approved for that study.

[5]CASA is an acronym for Court Appointed Special Advocates. *In re S.R.*, 452 S.W.3d 351, 357 (Tex. App.—Houston [14th Dist.] 2014, pet. denied).

But our analysis must focus on the child. Father's criminal behavior leading to confinement prevented him from being able to care for and protect Ryan. And although Father did participate in classes to better his parenting, he still had no way to care for Ryan at the time of trial. Although understandable, his desire for his family's assistance was at odds with their abilities. The evidence showed the best choice for Ryan's stability and permanency was remaining placed with the Department while it sought the best permanent placement. Thus, we agree with the Department that "the overwhelming majority of the *Holley* factors support the trial court's best-interest determination."

We overrule Father's third and fourth issues.

## E. Conclusion

Because we have overruled Father's four issues, we affirm the trial court's judgment.

/s/ Elizabeth Kerr
Elizabeth Kerr
Justice

Delivered: April 14, 2022

9